# EXHIBIT 2

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

12235 El Camino Real
San Diego, California 92130-3002

O: 858.350.2300
F: 866.974.7329

May 29,, 2026

***By Email***

Andrew D. Bochner, Esq.
Bochner PLLC
1040 Avenue of the Americas, 15th Floor,
New York, NY 10018
andrew@bochner.law

> **Re:     Intellectual Property Matters for Keru AI Inc.**

Dear Mr. Bochner:

We represent Keru AI Inc. ("Keru") in intellectual property matters.  We write in response to your May 18, 2026 letter on behalf of Internet Forest Corporation DBA New Generation ("New Gen").

As a preliminary matter, please understand that our client respects intellectual property and would never knowingly violate third-party rights.  Keru is confident, however, that no such violation has occurred here.

As you may know, Keru offers a verifiable AI platform designed for high-stakes financial analysis that uses hybrid architecture and language models for intent and code calculations.  Keru's proprietary platform separates language understanding from deterministic data retrieval so every numerical output is traceable, reproducible, and defensible.  Keru began rebranding its platform to KEPLER in October 2025 and offering its platform to third parties under the KEPLER name.  Keru has since acquired the <getkepler.ai> domain and the former domain owner's (Keplogic, Inc.) associated common law rights in KEPLER for AI software that date back to *at least as early as* April 2025.  Since Keru's rebrand to KEPLER, our client has received extensive publicity, including recognition by Anthropic's customer profile highlighting how Keru built verifiable AI for financial services and emphasizing its 94% accuracy in identifying 10-K line items.  *See, e.g.*, https://www.businesswire.com/news/home/20260521369696/en/Anthropic-Spotlights-Kepler-for-Verifiable-AI-in-Financial-Services.

Given the above history, your client's claim to protectable trademark rights in KEPLER is dubious at best.  Since Keru acquired rights in KEPLER for AI software dating back to at least as early as April 2025, your client has no priority basis on which to claim any common law rights.  Furthermore, there is no likelihood of confusion because the parties offer completely unrelated products to different channels of consumers.  According to your letter, New Gen's Kepler product is an "agentic commerce platform designed to help retailers upgrade their websites to be fully AI-ready."  Your client's Kepler product is specifically marketed to e-commerce brands, retailers, and digital marketers. Keru's KEPLER

**WILSON SONSINI**

Andrew D. Bochner, Esq
May 29, 2026
Page 2

platform is used by financial analysts and private equity firms to conduct secure market and investment research.  These are very different industries with distinct use cases.

Your letter claims that there is somehow a likelihood of confusion because both companies "operate AI-powered platforms directed at commercial enterprises, and both market their services to sophisticated business customers in the technology sector."  Your implication that there is a likelihood of confusion merely because your client and Keru both vaguely offer AI software is contrary to well-settled law.  Confusion is not likely just because two similar or even identical marks are both associated with products or services generally related to computer software.  *See* T.M.E.P. § 1402.03(d) ("The purpose of requiring specificity in identifying computer programs is to avoid the issuance of unnecessary refusals of registration under 15 U.S.C. §1052(d) where the actual goods of the parties are not related and there is no conflict in the marketplace.").  Further, your comment that both parties' respective consumers are "sophisticated" weighs against the argument that there is potential for confusion here—this is an established and well-known tenet of trademark law.

Given that our client has common law rights dating back to April 2025, our client rejects your demands and intends to continue using its KEPLER mark for its financial analytics business.  Please understand that if your client continues to press this issue or pivots its business closer to the financial services industry, however, our client may choose to assert its prior rights against New Gen.

Keru accordingly reserves all rights.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Chloe M. Delehanty

cc:  Keru AI Inc.