**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Internet Forest Corporation d/b/a New Generation,<br><br>*Plaintiff*,<br><br>v.<br><br>Keru AI Inc., Vinoo Ganesh, and John McRaven,<br><br>*Defendants*. | Civil Action No. 1:26-cv-05948-JAV |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS OF DEFENDANTS KERU AI INC. AND VINOO GANESH**

## Table of Contents

**Page**


I. Preliminary Statement ... 1
II. Background ... 2
III. Legal Standards ... 3
IV. Argument ... 4
A. All Three Counts Fail Because Plaintiff Cannot Establish Priority in a Protectable Mark. ... 5
1. KEPLER Is Primarily A Surname and Is Not Protectible Before Acquiring Secondary Meaning. ... 5
2. The Complaint Fails to Plead Facts To Plausibly Establish Plaintiff Had Already Acquired Secondary Meaning In KEPLER Both Before and in the Place that Defendants First Began Using It. ... 7
B. Plaintiff's New York Common Law Trademark Infringement Claims Fail Because the Complaint Does Not Plead Any Facts Showing Bad Faith ... 17
C. The Complaint Fails To Plead Any Facts Supporting Mr. Ganesh's Personal Liability ... 18
V. Conclusion ... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*815 Tonawanda St. Corp. v. Fay's Drug Co.*,
842 F.2d 643 (2d Cir. 1988)....................6, 9, 11

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
131 F. Supp. 3d 196 (S.D.N.Y. 2015)....................9

*Arista Records, LLC v. Doe*,
604 F.3d 110 (2d Cir. 2010)....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 11, 17, 20

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) (unpublished)....................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3, 4

*Bihari v. Gross*,
119 F. Supp. 2d 309 (S.D.N.Y. 2000)....................20

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999)....................20

*Brown v. Quiniou*,
744 F. Supp. 463 (S.D.N.Y. 1990)....................8

*Bubble Genius LLC v. Smith*,
239 F. Supp. 3d 586 (E.D.N.Y. 2017)....................11

*Campers' World Int'l v. Perry Ellis Int'l*,
No. 02cv453, 2002 WL 1870243 (S.D.N.Y. Aug. 13, 2002)....................19

*Canon U.S.A., Inc. Trading v. F&E Trading LLC*,
No. 15-CV-6015, 2017 WL 112515 (E.D.N.Y. Sept. 29, 2017)....................20

*Chanel, Inc. v. RealReal, Inc.*,
No. 18-CV-10626 (VSB), 449 F. Supp. 3d 422 (S.D.N.Y. Mar. 30, 2020)....................17

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416 (S.D.N.Y. 2008)....................17

*E.R. Squibb & Sons, Inc. v. Cooper Lab., Inc.*,
536 F. Supp. 523 (S.D.N.Y. 1982).....18

*Empresa Cubana Del Tabaco v. Culbro Corp.*,
2004 WL 602295 (S.D.N.Y. 2004), *aff'd in relevant part*, 399 F.3d 462 (2d Cir. 2005).....18

*Farmer v. Cty. of Westchester*,
No. 18 Civ. 2691, 2021 WL 4199944 (S.D.N.Y. Sept. 15, 2021).....21

*Feick v. Fleener*,
653 F.2d 69 (2d Cir. 1981).....4

*Hello I Am Elliot, Inc. v. Sine*,
No. 19-CV-6905 (PAE), 2020 WL 3619505 (S.D.N.Y. July 2, 2020).....10, 12, 16

*Hi-Tech Pharmacal Co. v. Hi-Tech Pharms.*,
No. 05-CV-2674 (ARR) (SMG), 2007 WL 1988737 (E.D.N.Y. July 5, 2007).....18

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
176 F. Supp. 3d 137 (E.D.N.Y. 2016).....19, 20

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995).....4

*Johns v. Winners Circle Ent., Inc.*,
No. 22-CV-4174 (LDH) (CLP), 2025 WL 296541 (E.D.N.Y. Jan. 24, 2025).....10, 11

*Kaplan, Inc. v. Yun*,
16 F. Supp. 3d 341 (S.D.N.Y. 2014).....4, 5

*KatiRoll Co. v. Kati Junction, Inc.*,
33 F. Supp. 3d 359 (S.D.N.Y. 2014).....19

*Kelly-Brown v. Winfrey*,
95 F. Supp. 3d 350 (S.D.N.Y. 2015).....12

*Lepore v. NL Brand Holdings LLC*,
No. 16 Civ. 08115, 2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017).....21

*Lopez v. Nike, Inc.*,
No. 20-CV-905 (PGG) (JLC), 2021 WL 128574 (S.D.N.Y. Jan. 14, 2021).....5, 17

*Matusovsky v. Merrill Lynch*,
186 F. Supp. 2d 397 (S.D.N.Y. 2002).....4

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*,
No. 21 Civ. 7922 (AKH), 2022 WL 684756 (S.D.N.Y. Mar. 8, 2022), *aff'd in relevant part*, No. 22-713-cv, 2022 WL 17175400 (2d Cir. Nov. 23, 2022)................9, 11, 12

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
531 F. Supp. 3d 673 (S.D.N.Y. 2021)..........................................................................21

*PaperCutter, Inc. v. Fay's Drug Co., Inc.*,
900 F.2d 558 (2d Cir. 1990)...........................................................................8, 9, 12

*Pgc Prop., L.L.C. v. Wainscott/Sagaponack Prop. Owners, Inc.*,
250 F. Supp. 2d 136 (E.D.N.Y. 2003) ........................................................................20

*Prince v. Madison Square Garden*,
427 F. Supp. 2d 372 (S.D.N.Y. 2006)..........................................................................20

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000)..............................................................................4

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015)..........................................................................20

*Romualdo v. Guru Krupa 104 Corp.*,
No. 19-CV-5188, 2023 WL 6167614 (E.D.N.Y. Sept. 1, 2023) ...........................................21

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
625 F.2d 1037 (2d Cir. 1980)........................................................................................8

*Sazerac Co., Inc. v. Falk*,
861 F. Supp. 253 (S.D.N.Y. 1994).................................................................................4

*Solid 21, Inc. v. Breitling U.S.A., Inc.*,
No. 3:19-cv-00514 (MPS), 2021 WL 4430755 (D. Conn. Sep. 27, 2021), *vacated in part on other grounds by* No. 3:19-cv-00514 (MPS), 2022 WL 204550 (D. Conn. January 24, 2022)..........................................................................6

*Something Old, Something New, Inc. v. QVC, Inc.*,
1999 WL 1125063 (S.D.N.Y. Dec. 8, 1999) ...................................................................17

*Star Indus., Inc. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005).........................................................................................17

*Steven Madden, Ltd. v. Jasmin Larian, LLC*,
2019 WL 294767 (S.D.N.Y. Jan. 22, 2019) .........................................................19, 20

*Time, Inc. v. Petersen Publ'g Co.*,
173 F.3d 113 (2d Cir. 1999)...........................................................................................5

*Two Hands IP LLC v. Two Hands Am., Inc.*,
563 F. Supp. 3d 290 (S.D.N.Y. 2021)....5

*Weizmann Inst. of Sci. v. Nesch*is,
229 F. Supp. 2d 234 (S.D.N.Y. 2002)....5

*Wonder Labs, Inc. v. Procter & Gamble, Co.*,
728 F. Supp. 1058 (S.D.N.Y. 1990)....17

*Wonderful Co. LLC v. Nut Cravings Inc.*,
No. 21-cv-3960, 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) ....12, 16

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*,
835 F.2d 990 (2d Cir. 1987)....6, 9, 10

**Statutes**

15 U.S.C. § 1125(a) ....20

**Other Authorities**

Fed. R. Civ. Proc. 8(a) ....21

Fed. R. Civ. Proc. 12(b)(6) ....1, 3, 21

Fed. R. Evid. 201 ....5

McCarthy on Trademarks and Unfair Competition § 16:34 (5th ed.) ....8, 15

Restatement (Third) of Unfair Competition § 19 ....15

Defendants Keru AI, Inc. ("Keru") and Vinoo Ganesh ("Mr. Ganesh"), by and through their attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint filed by Plaintiff Internet Forest Corporation d/b/a New Generation ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I. Preliminary Statement

The Complaint asserts claims against Keru, Mr. Ganesh, and John McRaven for alleged trademark infringement based on an unregistered and common surname: KEPLER (of famed astronomer Johannes Kepler). The conclusory, barebones Complaint fails to plausibly plead that Plaintiff has any protectable trademark rights in that name. Additionally, the Complaint's undifferentiated group allegations fail to give Mr. Ganesh notice of anything he did that could make him liable. The Complaint should be dismissed.[2]

A claim for infringement of an unregistered trademark requires pleading (and proving) facts sufficient to show that Plaintiff had established protectable rights before the time and in the place where Defendants first began using an allegedly infringing mark, and that the Defendants' alleged use of that mark has caused a likelihood of source confusion. The Complaint does not meet this bar. As further set forth below, KEPLER is a common surname. As such, KEPLER is protectable as a mark only if and only after it acquires secondary meaning—i.e., only after it has become associated by consumers as signifying a single source of particular goods or services. Therefore, to plausibly state a claim against Defendants, Plaintiff must plead (and later prove) facts sufficient to show: (1) that it had made commercial use of, *and* that it had acquired

---

[1] Citations to exhibits are to either to exhibits to the complaint (designated by "Compl., Ex. #") or to the concurrently-filed Declaration of Benjamin N. Simler (designated by "Ex. #").

[2] Because the Complaint is so clearly facially deficient against both individual defendants, Movant's Counsel asked that Plaintiff voluntarily dismiss them, but Plaintiff's counsel refused.

secondary meaning in, the surname KEPLER to establish it as a mark for its own goods or services in a particular geographic trade area; (2) *before* Defendants' own first use of the same or a similar mark in that same geographic trade area; and (3) that Defendants' use of the allegedly infringing mark in connection with its own goods or services causes a likelihood of confusion as to source.

But the Complaint fails to allege any facts to plausibly establish these elements. There are no facts to even suggest that Plaintiff acquired secondary meaning in the surname KEPLER in any particular geographic area, let alone that it acquired such meaning before Defendants' own first use of KEPLER.

Additionally, the Complaint fails to plead any basis for Mr. Ganesh's supposed individual liability. It never identifies even one act of Mr. Ganesh that could make him personally liable for infringing any trademark. It does not allege Mr. Ganesh used the name KEPLER at all, let alone that he used it in commerce in such a way that caused a likelihood of confusion as to the source of any goods or services. The only thing the Complaint says about Mr. Ganesh is that he is an executive of Keru who participated in Keru's selection of the mark KEPLER. That is not enough.

## II. BACKGROUND

The Complaint alleges that Keru, Mr. Ganesh, and Mr. McRaven (collectively, "Defendants") infringed Plaintiff's common law trademark rights in the name KEPLER. The Complaint asserts this claim in three counts: (1) Federal Unfair Competition (unregistered trademark infringement), (2) New York Common Law Trademark Infringement, and (3) New York Common Law Unfair Competition. At the root of each Count is the same claim: that Keru's use of KEPLER causes a likelihood of consumer confusion. (Compl. ¶¶ 69, 75, 78.)

The Complaint alleges that Plaintiff is a company claiming common law trademark rights in the name "KEPLER" for an "AI-powered commerce" platform that it allegedly "launched" on November 13, 2025, for "enterprise customers," including "customers in the financial services, banking, and private equity sectors." (Compl. ¶¶ 2, 13–14; *see also id.* ¶¶ 19–21.) The Complaint further alleges that Defendant Keru is a corporate entity that uses the name "KEPLER" for "competing AI platform services directed to enterprise and financial services customers," including through a website at the domain getkepler.ai. (Compl. ¶¶ 15, 29–35.)

The Complaint also includes three allegations against Mr. Ganesh:

1. that he "[u]pon information and belief, personally directed, authorized, controlled, participated in, and approved Keru's adoption and use of the Infringing Mark, including the decision to acquire the getkepler.ai domain, to brand Defendants' AI platform under the Infringing Mark, and to continue use of the Infringing Mark after receiving actual notice of Plaintiff's rights";

2. and that he is a "moving, active, conscious force behind Keru's infringing conduct."

3. that he is "a founder and principal of Keru AI Inc.";

(Compl. ¶¶ 16, 37.) Aside from these conclusory allegations, every other allegation in the Complaint uses the collective term "Defendants" without differentiating among Keru, Mr. Ganesh, or Mr. McRaven. (*See, e.g.*, Compl. ¶¶ 4–5, 29–42, 62–67.) And each Count incorporates all prior paragraphs by reference, without specifying which allegations apply to Mr. Ganesh individually. (Compl. ¶¶ 68, 73, 77.)

## III. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and alterations omitted). Basically, the non-conclusory factual allegations must be sufficient to "nudge[] [a] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Without converting this Motion to one for summary judgment, the Court may consider documents referenced in or integral to the Complaint, as well as judicially noticeable facts and records. *See Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71–72 (2d Cir. 1995). "[T]he Court may take judicial notice of official records of the United States Patent and Trademark Office." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014). If stated allegations are contradicted by referenced or judicially noticeable documents, the documents control. *See Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)); *see also Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("allegations . . . contradicted by . . . a document [referenced in the complaint] are insufficient to defeat a motion to dismiss"); *Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (granting motion to dismiss where "documents [referenced but not attached to complaint] contradict Plaintiff's allegations").

## IV. ARGUMENT

The Complaint fails to state any plausible claim against any Defendant and must be dismissed. All three Counts for unregistered trademark infringement, state and federal alike, fail because Plaintiff has not pleaded facts sufficient to establish its priority of protectable and protected rights in the name KEPLER as a mark. The state law claims (Counts II and III) also fail for the additional reason that the Complaint fails to plead facts to establish the additional

requisite bad faith element. As to Mr. Ganesh, the Complaint fails to allege facts that would establish his liability and does not give fair notice of any claim against him.

### A. All Three Counts Fail Because Plaintiff Cannot Establish Priority in a Protectable Mark.

"To prevail on a trademark infringement claim," whether under the Lanham Act or state law, "a plaintiff must demonstrate that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999) (citation omitted); *see also Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 301–302 (S.D.N.Y. 2021) ("courts use substantially the same standard for claims for trademark infringement under the Lanham Act, unfair competition under the Lanham Act, trademark infringement under New York State law, and unfair competition under New York State law").

#### 1. KEPLER Is Primarily A Surname and Is Not Protectible Before Acquiring Secondary Meaning.

KEPLER is a common and well-known surname, including of renowned astronomer Johannes Kepler.[3] (*See, e.*g., Ex. 1, U.S. Trademark App. Ser. No. 98/902,017, Response to Office Action at 9-10 (Nov. 03, 2025) (plaintiff's counsel: KEPLER is "primarily a surname"), *available at* https://tinyurl.com/tb2mnhfx; Ex. 2, U.S. Trademark App. Ser. No. 99/409,847, Nonfinal Office Action at 4, 20 (Feb. 25, 2026) (citing Meriam Webster dictionary definition of Kepler to establish that is primarily a surname), *available at* https://tinyurl.com/33vtwxme; *see*

[3] The Court may take judicial notice of "widely known adjudicative facts" not subject to reasonable dispute. *See* Fed. R. Evid. 201*; Weizmann Inst. of Sci. v. Nesch*is, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002)*; Lopez v. Nike, Inc.*, No. 20-CV-905 (PGG) (JLC), 2021 WL 128574, at *6 (S.D.N.Y. Jan. 14, 2021) (dictionaries and encyclopedias may be consulted when taking judicial notice of facts); *Kaplan*, 16 F. Supp. 3d at 345 ("the Court may take judicial notice of official records of the United States Patent and Trademark Office.").

*also* Ex. 2 at 4, 24 (citing published Lexis name directory as establishing the surname significance of KEPLER)).

And "personal names—both surnames and first names—are generally regarded as descriptive terms," meaning they can only become entitled to protection and can only serve as valid marks after the acquisition of secondary meaning. *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988); *see also Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987) ("[A] personal name[] is a descriptive mark.").

The USPTO routinely rejects applications for KEPLER-formative marks because KEPLER is primarily a surname:

| **Mark/Serial No.** | **USPTO Discussion**[4] |
|---|---|
| KEPLER INTELLIGENCE PLATFORM<br><br>Ser. No. 99/409,847[5] | "the applied-for mark is primarily merely a surname"<br><br>"KEPLER is a common surname"<br><br>"KEPLER does not appear in the dictionary other than as the surname of a noted astronomer. Thus, this term appears to have no recognized meaning or significance other than as a surname."<br><br>"when purchasers encounter applicant's services using the mark KEPLER INTELLIGENCE PLATFORM, they will immediately understand the primary significance of the mark as that of a surname." |

[4] *See Solid 21, Inc. v. Breitling U.S.A., Inc.*, No. 3:19-cv-00514 (MPS), 2021 WL 4430755, at *6–7 (D. Conn. Sep. 27, 2021) (taking judicial notice of the contents of a "Nonfinal Office Action" when considering distinctiveness because "considering these records as indicators of distinctiveness does not require the Court to consider the statements in the records as true"), *vacated in part on other grounds by* No. 3:19-cv-00514 (MPS), 2022 WL 204550 (D. Conn. January 24, 2022).

[5] Ex. 2, U.S. Trademark App. Ser. No. 99/409,847, Nonfinal Office Action at 3–5 (Feb. 25, 2026), *available at* https://tinyurl.com/33vtwxme.

| Mark/Serial No. | USPTO Discussion[4] |
|---|---|
| KEPLER<br><br>Ser. No. 98/902,013[6] | "the applied-for mark is primarily merely a surname"<br><br>"The term is defined as a biographical name."<br><br>"when purchasers encounter applicant's services using the mark KEPLER, they will immediately understand the primary significance of the mark as that of a surname." |
| KEPLER<br><br>Ser. No. 97/260,644[7] | "the applied-for mark is primarily merely a surname"<br><br>"KEPLER is a common surname"<br><br>"'KEPLER' does not appear in the dictionary except for as a surname of a famous astronomer and mathematician. Thus, this term appears to have no recognized meaning or significance other than as a surname" |

Even Plaintiff's own counsel has recently averred the same thing to the USPTO to obtain a registration of KEPLER for another of his clients, admitting that:

> "KEPLER is primarily a surname . . . . Surnames are inherently weak as trademarks and are typically refused registration on the Principal Register. Since KEPLER is primarily a surname, the term KEPLER is inherently weak."
>
> "The coexistence of [even] two separate registrations incorporating 'KEPLER' demonstrates that no single party enjoys exclusive rights to the term for the Relevant Services, underscoring its inherent weakness."

(*See* Ex. 1 at 9–10).

**2. The Complaint Fails to Plead Facts To Plausibly Establish Plaintiff Had Already Acquired Secondary Meaning In KEPLER Both Before and in the Place that Defendants First Began Using It.**

Because Plaintiff asserts only unregistered common-law rights in a surname, to state a plausible claim it must plead facts showing "the existence of a secondary meaning in [Plaintiff's]

---

[6] Ex. 3, U.S. Trademark App. Ser. No. 98/902,013, Nonfinal Office Action at 5–6 (June 3, 2025), *available at* https://tinyurl.com/mr3zkyk5.

[7] Ex. 4, U.S. Trademark App. Ser. No. 97/260,644, Nonfinal Office Action at 3–4 (Nov. 22, 2022), *available at* https://tinyurl.com/2m2tnwv2.

designation [i.e., KEPLER] ***at the time and place*** that [Defendants] first began use of the accused mark." McCarthy on Trademarks and Unfair Competition § 16:34 (5th ed.) (collecting cases) (emphasis added); *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980) ("Even if Saratoga Vichy has rights in the name 'Saratoga' because its use of the name has acquired a secondary meaning, it could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired."). Plaintiff has not pleaded any such facts. Nor can it. *See, e.g.*, *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 565 (2d Cir. 1990) ("[G]iven the very slight priority of use of the mark by the plaintiff over the defendant, it is hardly conceivable that customers could have come to associate plaintiff's mark with the source so as to 'prevent the use of that term by one whose use had begun before the secondary meaning was acquired.'"). The Complaint never pleads secondary meaning predating Defendants' alleged first use, never pleads secondary meaning in New York (or in any other identified market), and never pleads any facts from which secondary meaning predating Defendants' alleged first use might plausibly be inferred. Plaintiff's Complaint therefore fails to allege any trademark rights that Defendants might have infringed.

***First***, the Complaint never alleges any secondary meaning predating any of Defendants' uses. Plaintiff must plead facts showing that it had already acquired secondary meaning in KEPLER ***before*** Defendants began their allegedly infringing use. That is because, "even if secondary meaning is acquired, it will 'not prevent the use of [the] term by one whose use had begun before the secondary meaning was acquired.'" *Brown v. Quiniou*, 744 F. Supp. 463, 469 (S.D.N.Y. 1990) (quoting *Saratoga Vichy*, 625 F.2d at 1043). The Complaint does not allege a date of first "use"—meaning any actual commercial sale of any goods or rendering of service under the name KEPLER—but assuming that Plaintiff's first use of KEPLER was concurrent

with its product "launch" on November 13, 2025, and assuming the truth of the counterfactual allegation that Defendants first began using KEPLER on January 30, 2026, there were only eleven weeks between the parties' first uses, as pleaded by Plaintiff. (Compl. ¶¶ 14, 29.)[8] But an eleven-week window is far too short to support an inference (unpleaded) that Plaintiff acquired secondary meaning in the common surname KEPLER in any geographic market, let alone in New York specifically. *See, e.g.*, *PaperCutter*, 900 F.2d at 565 (2d Cir. 1990) ("it is hardly conceivable that customers could have come to associate plaintiff's mark with the source" within a day).

***Second***, the Complaint fails to allege any facts concerning any of Plaintiff's relevant activities during that eleven-week period that could possibly establish secondary meaning. *See, e.g.*, *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 21 Civ. 7922 (AKH), 2022 WL 684756, at *11 (S.D.N.Y. Mar. 8, 2022) ("Plaintiff fails plausibly to allege that 'MIDCAP' acquired secondary meaning prior to Defendants' first use in 2008, or prior to their allegedly infringing use—some time between 2012 and 2014."), *aff'd in relevant part*, No. 22-713-cv, 2022 WL 17175400 (2d Cir. Nov. 23, 2022).[9] To state a plausible claim, Plaintiff was required to allege facts sufficient to show that consumers had already "come to associate the [KEPLER] mark with goods or services from" Plaintiff before Defendants began their alleged infringements. *815 Tonawanda St. Corp.*, 842 F.2d at 647; *see also Yarmuth-Dion*, 835 F.2d at 993. That required

---

[8] In fact, Keru has national priority rights to KEPLER for services of its type stemming at least as far back as April 2025, i.e., six months *before* Plaintiff's alleged first use. (Compl., Ex. 2 at 2–3.)

[9] True, secondary meaning is a "fact-intensive inquiry" that usually is "ill-suited for resolution at the motion to dismiss stage." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212–13 (S.D.N.Y. 2015) (citation omitted). But that principle presupposes a complaint that pleads ***some*** facts of weight. Here, there are none.

Plaintiff to allege non-conclusory facts concerning the specific eleven-week period beginning with its own alleged first use and preceding Defendants', such as:

1. Plaintiff's advertising reach using KEPLER, including expenditures, target audiences, clicks, impressions, etc.;
2. consumer surveys that show an association between KEPLER and Plaintiff;
3. actual sales, revenues, or customers of goods or services under the KEPLER name;
4. unsolicited media coverage;
5. attempts by others to plagiarize the mark; and
6. the exclusivity of Plaintiff's use of KEPLER as a mark.

*See Yarmuth-Dion*, 835 F.2d at 993. Absent non-conclusory factual allegations sufficient to establish secondary meaning, courts in this Circuit do not hesitate to dismiss claims like Plaintiff's. *See Hello I Am Elliot, Inc. v. Sine*, No. 19-CV-6905 (PAE), 2020 WL 3619505, at *10 (S.D.N.Y. July 2, 2020) (dismissing under Rule 12(b)(6) where plaintiff had not "come close" to alleging secondary meaning notwithstanding allegations of advertising expenditures and sales success); *Johns v. Winners Circle Ent., Inc.*, No. 22-CV-4174 (LDH) (CLP), 2025 WL 296541, at *3–4 (E.D.N.Y. Jan. 24, 2025) (dismissing under Rule 12(b)(6) where plaintiff alleged "substantial[]" advertising investment and "significant revenue" but "include[d] no facts to support these assertions"). And here, the Complaint does not allege any facts of:

**(1) Advertising expenditures.** The Complaint does not plead any specific advertising expenditures, let alone before the critical date. No dollar figures, no campaigns, no channels, no time periods, no impressions, no target audiences, no clicks, nor even any specific advertisements are alleged. It offers only the assertion that, "[a]s a result of Plaintiff's continuous use, promotion, and investment, the KEPLER Mark is distinctive and associated with Plaintiff in the marketplace." (Compl. ¶ 26.) This allegation "is nothing more than a conclusory statement

devoid of factual content that does not pass muster under *Iqbal*." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) (dismissing under Rule 12(b)(6)); *see Johns*, 2025 WL 296541, at *3–4.

**(2) Consumer surveys linking the mark to the source.** The Complaint does not plead any consumer survey, study, or other evidence of any consumer perception, either before or after the critical date. It does not identify a single consumer in New York, or anywhere else, who understands KEPLER to refer to Plaintiff. *See 815 Tonawanda St. Corp.*, 842 F.2d at 648 (citing the lack of consumer surveys and testimony of any of its customers).

**(3) Sales success.** The Complaint does not plead any specific sales success. It alleges only that Plaintiff has "enterprise customers" and is "actively working with" banks, financial services companies, and private equity firms. (Compl. ¶¶ 23–24, 53.) Describing a category of supposed customers is not an allegation of sales success. *See Johns*, 2025 WL 296541, at *3–4 (finding that an allegation of "significant revenue" was insufficient absent supporting facts, warranting dismissal under Rule 12(b)(6)). Nor does anything in the Complaint aver that any of these activities preceded Defendants' use.

**(4) Unsolicited media coverage.** The Complaint only asserts that the "KEPLER platform has received industry attention, publicity, and recognition." (Compl. ¶ 25.) That conclusory assertion does not say who published anything, what was published, when, or where, or that any of this was unsolicited, or that any of it preceded Defendants' alleged first use. Indeed, Exhibit 1 to the Complaint shows that the *only* publicity was a paid-for press release. (*See* Compl., Ex. 1 at 7 (PR Newswire press release article).)[10] This conclusory allegation, therefore, is not entitled to

[10] The artverse.ca article is from Canada, and not relevant to United States trademark rights. (*See* Compl., Ex. 1 at 20). The servicenow article is not describing Plaintiff's service offering, but AI prompts generally. (*See* Compl., Ex. 1 at 27)*; MidCap*, 2022 WL 684756, at *11 2022) (news

any weight. *See Wonderful Co. LLC v. Nut Cravings Inc.*, No. 21-cv-3960, 2022 WL 4585344, at *2 (S.D.N.Y. Sept. 29, 2022) (conclusory assertions are "not entitled to be assumed true"); *see also MidCap*, 2022 WL 684756, at *11 (news article describing plaintiff's business in general was insufficient to plausibly allege that its descriptive mark had acquired secondary meaning).

**(5) Attempts to plagiarize the mark.** The Complaint does not allege any attempt by anyone to copy or trade on Plaintiff's claimed mark. Its only allegation is the conclusory assertion that "Defendants' continued use of the Infringing Mark after actual notice of Plaintiff's rights is willful, deliberate, and undertaken in bad faith." (Compl. ¶ 42.) Continued use after receiving a demand letter is not an attempt to plagiarize a mark, and in any event, a bare assertion of willfulness pleads no facts about consumer association. *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 359 n.6 (S.D.N.Y. 2015) ("Plaintiffs fail[ed] to identify any attempts to intentionally copy or plagiarize" trademark despite having "issued cease and desist notices to other businesses that used" the mark).

**(6) Length and exclusivity of use.** By Plaintiff's own account, it had only used KEPLER for roughly eleven weeks before Defendants' alleged use began. (Compl. ¶¶ 14, 29.) Eleven weeks of use cannot plausibly establish that a descriptive, well-known surname came to signify a single source. *See PaperCutter*, 900 F.2d at 565; *Hello I Am Elliot*, 2020 WL 3619505, at *10 (crediting the "relatively short length of time of exclusive use" in finding no secondary meaning on a preliminary injunction). Nor is Plaintiff's use even close to exclusive. The Complaint even identifies at least prior user of the getkepler.ai domain name that used the mark before Plaintiff's

---

article describing plaintiff's business in general was insufficient to plausibly allege that its descriptive mark MIDCAP had acquired secondary meaning).

alleged use—a prior user to whose rights Keru succeeded—and alleges even that prior use was "non-exclusive." (Compl. ¶¶ 43-44, 46.)

Indeed, even Plaintiff's counsel is aware of other preceding users of KEPLER. (*See* Ex. 5, U.S. Trademark App. Ser. No. 98/902,017 (applying for KEPLER); Ex. 6, U.S. Trademark App. Ser. No. 98/902,013 (same).) In fact, there are many other KEPLER marks in classes 9 and 42, which cover software and software-related services, such as the following limited sample:

| **Mark** | **Owner Information** | **Recited Goods/Services** |
|---|---|---|
| KEPLER<br>Ser. No. 99/868,537[11] | Axosoft, LLC<br>251 Little Falls Drive,<br>Wilmington, DE 19808 | IC 009: Downloadable software development tools for using artificial intelligence in software development.<br>IC 0042 Providing temporary use of on-line non-downloadable software development tools for using artificial intelligence in software development |
| KEPLER<br>Reg. No. 2,157,319[12]<br>Ser. No. 75/062,363 | ADOBE INC.<br>345 Park Avenue,<br>San Jose, CA 95110 | IC 009: Computer software for creating fonts; typeface font computer software . . . |
| KEPLER<br>Reg. No. 7,422,205[13]<br>Ser. No. 98/259,962 | Kepler Interactive Limited<br>7 Savoy Court<br>London WC2R0EX UK | IC 009: Recorded computer game programs; Downloadable computer application software for mobile phones and handheld computers, namely, software for use in database management and use in electronic storage of data; . . . . |
| KEPLR AI<br>Ser. No. 98/890,088[14] | Keplr Technologies<br>660 N Oxford Av. Apt: 301, Los Angeles, CA 90004 | IC 042: Design and development of computer software for platform-as-a-service (PaaS) for facilitating advanced data analysis, enterprise data integration, and operational intelligence through artificial intelligence (AI); providing temporary use of non-downloadable software for data integration, financial analysis, and enterprise decision support in the fields of artificial intelligence, generative AI, and machine learning |

[11] Ex. 7, U.S. Trademark App. Ser. No. 99/868,537, *available at* https://tinyurl.com/h56jwe4t.

[12] Ex. 8, U.S. Trademark Reg. No. 2,157,319, *available at* https://tinyurl.com/3wv4cdbt.

[13] Ex. 9, U.S. Trademark Reg. No. 7,422,205, *available at* https://tinyurl.com/bdhr7rk9.

[14] Ex. 10, U.S. Trademark App. Ser. No. 98/890,088, *available at* https://tinyurl.com/bda66mev.

| Mark | Owner Information | Recited Goods/Services |
|---|---|---|
| KEPLER<br>Reg. No. 7,416,070[15]<br>Ser. No. 79/275,791 | Deutsches Zentrum Für Luft- Und Raumfahrt E.V. Linder Höhe 51147 Köln Germany | IC 009: Distance measuring apparatus; instruments for measuring length; programmable logic controllers; satellites; satellite earth stations, namely, . . .<br><br>IC 042: Earth science services, namely, environmental testing and inspection services; engineering services; engineering surveying, technological... |
| KEPLER INTELLIGENCE PLATFORM<br>Ser. No. 99/409,847[16] | Kepler Group LLC<br>6 East 32nd Street 9th Fl., New York, NY 10016 | IC 042: Computer services, namely, hosting an on-line interactive suite of computer software applications in the nature of marketing tools for use in standardizing and automating advertising campaign deployment across marketing channels, accessing comprehensive reporting and advanced analytics using a database of integrated prospect, customer, campaign and transaction data, and improving measurable performance of marketing campaigns; Computer services, namely hosting an on-line interactive suite of computer software applications using AI in the nature of marketing tools for use in standardizing and automating advertising campaign deployment across marketing channels, accessing comprehensive reporting and advanced analytics using a database of integrated prospect, customer, campaign and transaction data, and improving measurable performance of marketing campaigns |
| MERSIVE KEPLER<br>Reg. No. 7,185,375[17]<br>Ser. No. 88452901 | Mersive Technologies, Inc.<br>2399 Blake Street, Suite 150, Denver, CO 80205 | IC 042: Cloud based services in the nature of providing temporary use of non-downloadable cloud based software for monitoring and analyzing meeting space collaboration and utilization |

[15] Ex. 11, U.S. Trademark Reg. No. 7,416,070, *available at* https://tinyurl.com/3fanyn3c.

[16] Ex. 12, U.S. Trademark App. Ser. No. 99/409,847, *available at* https://tinyurl.com/4jbhtprr.

[17] Ex. 13, U.S. Trademark Reg. No. 7,185,375, *available at* https://tinyurl.com/56tx48r6.

"The coexistence of two separate registrations incorporating 'KEPLER' demonstrates that no single party enjoys exclusive rights to the term for the Relevant Services, underscoring its inherent weakness." (*See* Ex. 1 at 9.) There is no plausible case to be made except that KEPLER is and has been widely used, and it has never been used exclusively by Plaintiff.[18]

***Third***, in addition to the general failure to plead facts sufficient to demonstrate secondary meaning anywhere, the Complaint does not plead any facts placing Plaintiff's use of KEPLER or acquisition of secondary meaning at the place Defendants began their own alleged use. *See, e.g.*, McCarthy § 16:34 (quoting Restatement (Third) of Unfair Competition § 19 ("If the prior user's designation has not yet acquired secondary meaning in the relevant area, the prior user does not have priority over a subsequent good faith user who adopts the designation in that area.")). At best, the Complaint supports an inference that there is no overlapping geographic market at all: Plaintiff is headquartered in San Francisco (Compl. ¶ 13), while Keru and the individual Defendants are based in New York (Compl. ¶¶ 15–16). The Complaint does not identify a single customer, a single sale, a single transaction, or a single advertisement it made or had in New York. It alleges only, in the abstract, that Plaintiff has "enterprise customers" and is "actively working with" banks, financial services companies, and private equity firms (Compl. ¶¶ 23–24, 53), but it never states that any of those customers are located in New York, or that any of those relationships were formed in New York, or that any of its services were rendered in New York. Nor does the Complaint allege where Plaintiff advertises, where it markets, where its platform is offered, or where consumers have come to recognize KEPLER as Plaintiff's brand. The

[18] Indeed, as the letter attached to the Complaint as Exhibit 2 indicates, Keru's selection and use of the name KEPLER for its own products dates to October 2025, and it acquired rights in the name reaching back to April 2025—all predating Plaintiff's alleged first use of KEPLER (Compl., Ex. 2).

Complaint's bare assertion that the parties' markets "directly overlap[]" (Compl. ¶ 53), which does not specify a market geography, is a mere conclusion entitled to no weight. *See Wonderful*, 2022 WL 4585344, at *2 (conclusory assertions are "not entitled to be assumed true"). Without the required factual allegations, there is no basis to infer that the parties' uses overlap anywhere at all, let alone in any place where Plaintiff acquired secondary meaning in the name KEPLER before Defendants' use in that place.

Finally, Plaintiff's conclusory allegation that "the KEPLER Mark is distinctive and associated with Plaintiff in the marketplace" (Compl. ¶ 26) is not entitled to any weight or to a presumption of truth. *Wonderful*, 2022 WL 4585344, at *2 (conclusory assertion of inherent distinctiveness is "not entitled to be assumed true").

In sum, Plaintiff is not entitled to any of the presumptions of validity or ownership that a registration confers, so it must plead specific facts that it had protected rights in the asserted KEPLER name in the place where Defendants used it and before Defendants began using it. But KEPLER is a surname, so to state a plausible claim, the Complaint must allege facts sufficient to support a reasonable inference that the name KEPLER had acquired secondary meaning and become associated by consumers with Plaintiff as the single source of goods or services under that name, in a specific geographic area, and before Defendants began using their own mark in that place. *See, e.g., Hello I Am Elliot*, 2020 WL 3619505, at *10 (dismissing under Rule 12(b)(6) where plaintiff had not "come close" to alleging secondary meaning). The Complaint does not come close to doing this. Therefore, all of Plaintiff's claims are not plausibly stated and the Complaint must be dismissed.

### B. Plaintiff's New York Common Law Trademark Infringement Claims Fail Because the Complaint Does Not Plead Any Facts Showing Bad Faith

Plaintiff's state law claims both fail for the additional independent reason that the Complaint fails to plead any facts showing any of the Defendants' bad faith, as required for those claims. *Lopez*, 2021 WL 128574, at *5 (collecting cases). Bad faith "generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Chanel, Inc. v. RealReal, Inc.*, No. 18-CV-10626 (VSB), 449 F. Supp. 3d 422, 446 (S.D.N.Y. Mar. 30, 2020) (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005)).

The Complaint makes no factual allegations of bad faith. Plaintiff merely alleges in a conclusory manner that "Defendants' conduct has been willful, deliberate, and in bad faith" (Compl. ¶ 72); that "Defendants' conduct is willful and in bad faith" (Compl. ¶ 79); and that "Defendants' continued use of the Infringing Mark after actual notice of Plaintiff's rights is willful, deliberate, and undertaken in bad faith" (Compl. ¶ 42). But these allegations are "not entitled to [an] assumption of truth." *Lopez*, 2021 WL 128574, at *11 (quoting *Iqbal*, 556 U.S. at 679) (assertions that a defendant "acted in bad faith" must be "supported by factual allegations").

The only even remotely close factual allegation of bad faith is that Defendants continued using the mark after receiving a cease-and-desist letter. (Compl. ¶¶ 38–42.) But that allegation does not make the claims plausible, because "the 'failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith' as a matter of law." *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008); *Something Old, Something New, Inc. v. QVC, Inc.*, 1999 WL 1125063, *7 (S.D.N.Y. Dec. 8, 1999) ("Defendant's failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith."), citing *Wonder Labs, Inc. v. Procter & Gamble, Co.*, 728 F.

Supp. 1058, 1064 (S.D.N.Y. 1990); *see also E.R. Squibb & Sons, Inc. v. Cooper Lab., Inc.*, 536 F. Supp. 523, 532 (S.D.N.Y. 1982) ("In choosing a highly descriptive mark, [plaintiff] acted at its peril; where a second comer chooses a descriptive word to name its product, more than simple knowledge of the prior use is needed to show an intent to misappropriate goodwill.").

In fact, the Complaint pleads facts that directly negate any inference of bad faith. Specifically, that Defendants responded to Plaintiff's cease-and-desist letter with evidence that Keru is the senior user of the mark. (Compl. ¶ 43.) By definition, a defendant who uses a mark believing it is the senior user does not act in bad faith. *Empresa Cubana Del Tabaco v. Culbro Corp.*, 2004 WL 602295, at *45 (S.D.N.Y. 2004), *aff'd in relevant part*, 399 F.3d 462, 485 (2d Cir. 2005); *see also Hi-Tech Pharmacal Co. v. Hi-Tech Pharms.*, No. 05-CV-2674 (ARR) (SMG), 2007 WL 1988737, at *11 (E.D.N.Y. July 5, 2007) ("[P]laintiff has presented no evidence that defendant's persistence in the use of its mark during the course of this litigation represents anything but a good faith belief that it is entitled to do so because plaintiff's mark is not protectible . . . ."). Because the Complaint fails to allege facts to support a reasonable inference that Defendants <u>adopted</u> the mark <u>intending</u> to exploit Plaintiff's goodwill, and instead alleges facts confirming Defendants' good faith belief that Keru is the senior user, Plaintiff's New York common law claims should be dismissed with prejudice.

### C. The Complaint Fails To Plead Any Facts Supporting Mr. Ganesh's Personal Liability

The Complaint also fails to plausibly allege any claim against Mr. Ganesh individually. Here, the Complaint makes only three personalized allegations against Mr. Ganesh:

1. that he "[u]pon information and belief, personally directed, authorized, controlled, participated in, and approved Keru's adoption and use of the Infringing Mark, including the decision to acquire the getkepler.ai domain, to brand Defendants' AI platform under the Infringing Mark, and to continue use of the Infringing Mark after receiving actual notice of Plaintiff's rights,"

2. that he is a "moving, active, conscious force behind Keru's infringing conduct," and

3. that he is "a founder and principal of Keru AI Inc."

(Compl. ¶¶ 16, 37.) Of these allegations, the second is a pure legal conclusion, the first is primarily a legal conclusion, and the third is a factual allegation.

As to the third allegation, an individual is not liable for the alleged torts of a corporation solely by virtue of his status as a corporate officer. *Campers' World Int'l v. Perry Ellis Int'l*, No. 02cv453, 2002 WL 1870243, at *5 (S.D.N.Y. Aug. 13, 2002); *Steven Madden, Ltd. v. Jasmin Larian, LLC*, 2019 WL 294767, at *4 (S.D.N.Y. Jan. 22, 2019). Rather, a corporate officer may be held personally liable for trademark infringement of a corporate defendant ***only*** "if the officer is a moving, active[,] conscious force [behind the defendant corporation's] infringement." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) (alterations original). And that standard is met only if the officer "was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant ***in the infringing activity***." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016) (emphasis added). Mr. Ganesh's status as founder and principal, at least without an allegation that he is Keru's only actor (which he is not), does not suffice.

In the first and second allegations, Plaintiff alleges that Mr. Ganesh is the "moving, active, conscious force behind Keru's infringing conduct" (Compl. ¶ 37) and that Mr. Ganesh "upon information and belief . . . personally directed, authorized, controlled, participated in, and approved Keru's adoption and use of the Infringing Mark" (Compl. ¶ 16.) These conclusory allegations are essentially verbatim recitations of the legal standard and devoid of any facts, so neither is entitled to a presumption of truth. *Steven Madden*, 2019 WL 294767, at *5 (dismissing claims where complaint failed to allege any specific act of infringement committed by individual

defendant, "but merely state conclusory allegations that conflate the Company's actions with [the individual's actions.]"); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) (dismissing as insufficient complaint with allegations similarly deficient as those made here); *see also Canon U.S.A., Inc. Trading v. F&E Trading LLC*, No. 15-CV-6015, 2017 WL 112515, at *4 (E.D.N.Y. Sept. 29, 2017) ("[T]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[] do not suffice."), quoting *Iqbal*, 556 U.S. at 678.

Finally, the first allegation is an "upon information and belief" assertion that Mr. Ganesh participated in "the decision to acquire the getkepler.ai domain" and "to brand Defendants' AI platform under the Infringing Mark." (Compl. ¶ 16.) But these allegations do not "nudge" the Complaint's claims against Mr. Ganesh across the line from the merely possible to the plausible. For one, "information and belief" allegations must rest on facts that make culpability plausible and provide a basis for the belief, but the Complaint here supplies neither. *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *see Steven Madden*, 2019 WL 294767, at *3. What's more, even if the Complaint's "information and belief" allegations were entitled to any weight, they still would be insufficient to make Mr. Ganesh liable. That's because Mr. Ganesh's alleged participation in *acquiring* a domain name and in *selecting* a brand name does not amount to participation "in the infringing activity." *Innovation Ventures, LLC*, 176 F. Supp. 3d at 155. By definition, infringing activity means "use in commerce" of a mark in connection with the sale or transportation of goods or services. *See* 15 U.S.C. § 1125(a); *Pgc Prop., L.L.C. v. Wainscott/Sagaponack Prop. Owners, Inc.*, 250 F. Supp. 2d 136 (E.D.N.Y. 2003) (citing *Bihari v. Gross*, 119 F. Supp. 2d 309, 318 (S.D.N.Y. 2000) ("mere activation or registration of a domain name does not constitute commercial use per se"); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036,

1052 (9th Cir. 1999) (the act of registering a domain name, without more, does not constitute commercial use)). Therefore, the Complaint fails against Mr. Ganesh under Rule 12(b)(6).

It also fails under Rule 8(a). Aside from the above insufficient allegations, the Complaint otherwise impermissibly lumps all "Defendants" together, never distinguishing or providing any basis to distinguish the alleged misdeeds of Mr. Ganesh from those alleged against Mr. McRaven, or of either from those of Keru. (*See, e.g.*, Compl. ¶¶ 4–5, 29–42, 62–67.) Each Count also incorporates all prior paragraphs by reference, with nothing ever specifying which factual allegations apply to Mr. Ganesh himself. (Compl. ¶¶ 68, 73, 77.) This kind of collective pleading, which fails to identify which defendant supposedly did what wrong acts, fails Rule 8(a)(2)'s requirement that the Complaint provide Mr. Ganesh with "fair notice" of the claims against him. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (unpublished) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy this minimum standard."); *Lepore v. NL Brand Holdings LLC*, No. 16 Civ. 08115, 2017 WL 4712633, at *6 (S.D.N.Y. Sept. 28, 2017) ("[A]llegations [that] are based on 'group pleading' [are] insufficient. Group pleading refers to an allegation that simply lumps or groups defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct."); *Romualdo v. Guru Krupa 104 Corp.*, No. 19-CV-5188, 2023 WL 6167614, at *8 (E.D.N.Y. Sept. 1, 2023) ("'[I]t is well-established ... that plaintiffs cannot simply lump defendants together for pleading purposes,' and that 'Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.'") (citing cases); *see also Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (collecting cases); *Farmer v. Cty. of Westchester*, No. 18 Civ.

2691, 2021 WL 4199944, at *6-7 (S.D.N.Y. Sept. 15, 2021). The Complaint leaves Mr. Ganesh to guess what he supposedly did and deprives him of the fair notice the Rules demand.

Accordingly, the Complaint should be dismissed as against Mr. Ganesh individually on this additional basis.

## V. CONCLUSION

For the foregoing reasons, Defendants Keru and Mr. Ganesh respectfully request that this Court grant their Motion and dismiss the Complaint in its entirety as against them.

Dated: September 2, 2026

BALLARD SPAHR LLP

*/s/* Benjamin N. Simler
Marjorie J. Peerce
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (646) 346-8039
Email: peercem@ballardspahr.com

Lynn E. Rzonca (admitted *pro hac vice*)
Benjamin N. Simler (admitted *pro hac vice*)
Doyle S. Tuvesson (*pro hac vice* to be filed)
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Email: rzoncal@ballardspahr.com
simlerb@ballardspahr.com
tuvessond@ballardspahr.com

*Attorneys for Defendants Keru AI Inc. and Vinoo Ganesh*

## CERTIFICATE OF WORD COUNT

I hereby certify that the above Memorandum of Law contains 6,797 words according to the word count of the word-processing program (Microsoft Word) used to prepare the document, in accordance with Local Rule 7.1(c).

*/s/* Benjamin N. Simler
Benjamin N. Simler