**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Internet Forest Corporation d/b/a New Generation,<br><br>Plaintiff,<br><br>v.<br><br>Keru AI Inc., Vinoo Ganesh, and John McRaven,<br><br>Defendants. | CIVIL ACTION NO.: 1:2026-cv-05948-JAV<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Internet Forest Corporation d/b/a New Generation ("Plaintiff" or "New Gen"), by and through its attorneys, BOCHNER PLLC, for its First Amended Complaint against Defendants Keru AI Inc. ("Keru"), Vinoo Ganesh ("Ganesh"), and John McRaven ("McRaven") (collectively, "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for trademark infringement and unfair competition arising from Defendants' unauthorized use of the mark KEPLER (the "Infringing Mark") in connection with artificial intelligence software and platform services directed to commercial enterprises. Plaintiff brings this action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law of the State of New York.

2. Plaintiff launched its KEPLER platform on November 13, 2025 and has since used the mark KEPLER (the "KEPLER Mark") continuously in commerce in connection with an AI-powered commerce platform for enterprise customers, including customers in the financial services, banking, and private equity sectors.

3. Plaintiff has invested substantial time, money, and resources in developing, promoting, and expanding the KEPLER platform and has built significant goodwill associated with the KEPLER Mark.

4. Defendants, with full knowledge of Plaintiff's rights, have adopted and are using the Infringing Mark in connection with competing AI platform services directed to enterprise and financial services customers. Defendants have refused to cease use and have expressly stated their intent to continue using the Infringing Mark.

5. Defendants' use of the Infringing Mark in the rapidly developing artificial intelligence marketplace is likely to cause confusion, including reverse confusion, as to source, affiliation, sponsorship, or approval.

6. Confusion has already occurred. After selling a domain incorporating the term "Kepler," the seller was unable to distinguish between Plaintiff and Defendants and mistakenly believed he had sold the domain to Plaintiff rather than to Defendants.

## JURISDICTION

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendant Keru because it is incorporated in New York, maintains its principal place of business in this District, and conducts business in and directs its infringing conduct toward this District.

10. This Court has personal jurisdiction over Defendants Ganesh and McRaven because they reside in this District, transact business in this District, and personally directed, authorized, and participated in the tortious conduct giving rise to this action within this District. Defendants Ganesh and McRaven have purposefully availed themselves of the privilege of conducting activities in this District through their personal direction and control of Keru's infringing activities.

11. Defendants' infringing conduct has caused injury to Plaintiff in this District.

**VENUE**

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district, and/or 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

**PARTIES**

13. Plaintiff Internet Forest Corporation is a corporation organized under the laws of the State of Delaware, doing business as New Generation, with its principal place of business in San Francisco, California, and engaged in developing AI-powered commerce infrastructure for enterprise customers.

14. Plaintiff launched its KEPLER platform on November 13, 2025.

15. Defendant Keru AI Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

16. Defendant Vinoo Ganesh is, upon information and belief, a founder and principal of Keru AI Inc. who resides in this District. Upon information and belief, Ganesh personally directed, authorized, controlled, participated in, and approved Keru's adoption and use of the Infringing Mark, including the decision to acquire the getkepler.ai domain, to brand Defendants' AI platform under the Infringing Mark, and to continue use of the Infringing Mark after receiving actual notice of Plaintiff's rights.

17. Defendant John McRaven is, upon information and belief, a founder and principal of Keru AI Inc. who resides in this District. Upon information and belief, McRaven personally directed, authorized, controlled, participated in, and approved Keru's adoption and use of the Infringing Mark, including the decision to acquire the getkepler.ai domain, to brand Defendants' AI platform under the Infringing Mark, and to continue use of the Infringing Mark after receiving actual notice of Plaintiff's rights.

18. Upon information and belief, Defendants operate under the name "KEPLER" and offer an AI-based platform directed to commercial and enterprise users.

## FACTS

A. <u>Plaintiff and the KEPLER Mark</u>

19. Plaintiff developed and launched the KEPLER platform on November 13, 2025 as an end-to-end AI-powered commerce platform.

20. Plaintiff has continuously used the KEPLER Mark in commerce since its launch.

21. Plaintiff's KEPLER platform enables enterprise users to structure, analyze, and present product and commercial data for AI-driven systems, including conversational commerce, AI-enabled storefronts, and data analytics.

22. Plaintiff has promoted the KEPLER platform through its website, press releases, publications, industry events, and enterprise business development efforts.

23. Plaintiff has secured enterprise customers and established commercial relationships under the KEPLER Mark.

24. Plaintiff is actively engaged in contract negotiations with financial services companies, banks, and private equity firms under the KEPLER Mark.

25. Plaintiff's KEPLER platform has received industry attention, publicity, and recognition.

26. Plaintiff has spent approximately $1,000,000 on branding and marketing the KEPLER Mark.

27. Plaintiff has secured contracts worth approximately $500,000, a commercial partnership worth approximately $2,350,000, and is negotiating contracts worth approximately $3,000,000.

28. Plaintiff's CEO has gone on podcasts to market and discuss the KEPLER platform.

29. As a result of Plaintiff's continuous use, promotion, and investment, the KEPLER Mark is distinctive and associated with Plaintiff in the marketplace.

30. Plaintiff owns valid and enforceable common law trademark rights in the KEPLER Mark.

31. Plaintiff has also filed an application to register the KEPLER Mark with the United States Patent and Trademark Office on the Principal Register, Serial No. 99918055, in International Class 42, covering:

> Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for enabling conversational commerce experiences on e-commerce websites; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for making e-commerce product catalogs

readable and actionable by AI systems and large language models (LLMs); Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for search, product discovery, and product recommendations in the field of e-commerce; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for analyzing and reporting consumer behavior, shopping intent, and website traffic in the field of e-commerce; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for improving engagement between e-commerce customers and e-commerce website content; Design and development of artificial intelligence (AI) software for improving e-commerce websites; Technology consultation in the field of artificial intelligence for e-commerce; Application service provider featuring application programming interface (API) software for enabling connectivity and data exchange between merchant e-commerce systems and artificial intelligence (AI) systems; Providing temporary use of on-line non-downloadable software and applications using artificial intelligence (AI) for enabling brand-owned and merchant-owned AI agents and chatbots to interact with e-commerce customers and third-party AI agents."

A true and correct copy of the USPTO application record is attached as Exhibit E.

B. Defendants' Infringing Conduct

32. Upon information and belief, Defendants adopted the Infringing Mark in connection with their AI platform on or about January 30, 2026.

33. Defendants offer an AI platform directed to enterprise and commercial users, including users in the financial services sector.

34. Defendants' services involve AI-driven software tools, data analysis, and enterprise decision-making.

35. The Infringing Mark is identical to Plaintiff's KEPLER Mark.

36. Defendants use the Infringing Mark in overlapping channels of trade, including online promotion, enterprise sales, investor outreach, and industry-facing communications.

37. Defendants' use of the Infringing Mark is likely to cause confusion, mistake, and deception as to the source, affiliation, sponsorship, or approval of Defendants' services.

38. Defendants' conduct is likely to cause reverse confusion, whereby consumers, partners, and industry participants may mistakenly believe that Plaintiff's platform under the KEPLER Mark is associated with, junior to, or a division of Defendants.

39. Defendants' conduct falsely suggests that Defendants are affiliated with, sponsored by, or endorsed by Plaintiff.

40. The acts of infringement described herein were undertaken by Keru at the direction of, with the authorization of, and with the active participation of Ganesh and McRaven, who are the moving, active, conscious force behind Keru's infringing conduct.

C. Plaintiff's Cease and Desist Letter to Defendants and Their Response

41. On May 18, 2026, Plaintiff's counsel sent Defendants a cease and desist letter demanding that Defendants cease all use of the Infringing Mark and related designations. A copy of the cease and desist letter is attached as Exhibit A.

42. On or about May 29, 2026, counsel for Defendants responded and expressly rejected Plaintiff's demands. A copy of Defendants' response is attached as Exhibit B.

43. In that response, Defendants stated that they intend to continue using the Infringing Mark.

44. Defendants further asserted that they may choose to enforce alleged rights against Plaintiff.

45. Defendants' continued use of the Infringing Mark after actual notice of Plaintiff's rights is willful, deliberate, and undertaken in bad faith.

D. Defendants' Claimed Priority Is Invalid or Inferior

46. In response to Plaintiff's cease and desist letter, Defendants asserted that they acquired alleged common law rights in the Infringing Mark through a third-party entity known as

Keplogic, Inc. ("Keplogic"), the previous owner of the getkepler.ai domain, purportedly dating to April 2025.

47. Upon information and belief, Keplogic operated a platform for bioinformatics and scientific research, a business entirely unrelated to the enterprise commerce and financial services markets in which the parties now compete. Archived captures of Keplogic's website confirm that its services were directed to life sciences and scientific research markets and not to the enterprise commerce, financial services, or general AI platform markets. A representative archived capture of Keplogic's website is attached as Exhibit C.

48. Upon information and belief, Keplogic ceased operations prior to Defendants' alleged acquisition.

49. Upon information and belief, any prior use of the term "KEPLER" by Keplogic was limited, non-exclusive, and insufficient to establish protectable trademark rights in the markets now served by either party.

50. Upon information and belief, any purported assignment of rights from Keplogic to Defendants did not include a valid transfer of goodwill associated with any alleged mark, rendering the assignment invalid under applicable law.

51. Upon information and belief, Defendants cannot demonstrate continuous, bona fide commercial use of the Infringing Mark sufficient to establish priority over Plaintiff.

52. Defendants' assertion of priority is a post hoc justification for their adoption of the Infringing Mark.

E. Overlapping Markets and Likelihood of Confusion

53. Both parties provide AI-based software platforms to enterprise users.

54. Both parties operate within the broader artificial intelligence software market and promote services built on large language models, data processing, and AI-assisted decision-making.

55. Both parties target sophisticated business customers, including customers in the financial services sector.

56. Plaintiff is actively working with banks, financial services companies, and private equity firms under the KEPLER Mark, directly overlapping with Defendants' asserted market.

57. Both parties use overlapping channels of trade, including online marketing, industry publications, technology conferences, investor outreach, and direct enterprise sales.

58. In the modern AI marketplace, companies frequently expand across adjacent verticals and use cases, increasing the likelihood that use of the Infringing Mark will be perceived as indicating a common source, affiliation, sponsorship, or expansion.

59. The identity of the marks, combined with the proximity of the parties' services and channels of trade, creates a strong likelihood of confusion.

F. Evidence of Actual Confusion

60. On March 19, 2026, Plaintiff's co-founder and representative, Jonathan Arena, contacted Ashton Teng, the founder of Keplogic, via LinkedIn regarding the acquisition of the getkepler.ai domain. Mr. Arena referenced a letter Mr. Teng had posted on the getkepler.ai website indicating that Keplogic had "decided to move in a different direction" and inquired whether the domain was available for purchase. A screenshot of the conversation is attached as Exhibit D.

61. Upon information and belief, Defendants Ganesh and McRaven negotiated the purchase of the getkepler.ai domain with Mr. Teng's company.

62. The getkepler.ai domain was subsequently sold to Defendants rather than to Plaintiff.

63. On May 11, 2026, Mr. Teng confused Plaintiff and Defendants and indicated that he believed he had sold the domain to Plaintiff, stating to Mr. Arena that "I think we already sold it to you!" Mr. Arena responded that Plaintiff had not acquired the domain and that Mr. Teng had "sold it to someone else."

64. On May 13, 2026, Mr. Teng acknowledged his confusion, stating that "[s]omeone else reached out to my colleague and I just assumed it was the same company" and that he "thought it was unlikely that two companies would want our domain." Mr. Teng's confusion arose directly from the parties' use of the identical term "Kepler" in connection with AI platform services.

65. This instance of actual confusion among industry participants demonstrates that Defendants' use of the Infringing Mark is already causing marketplace confusion between the parties.

G. Ongoing and Irreparable Harm

66. Plaintiff has invested substantial time, money, and resources in the KEPLER Mark.

67. Defendants' continued use of the Infringing Mark deprives Plaintiff of control over its reputation and goodwill.

68. Defendants' conduct threatens confusion among customers, prospective customers, partners, investors, and industry participants.

69. Defendants' actions risk reverse confusion in the marketplace, whereby Plaintiff's established KEPLER Mark may be subsumed by or mistakenly associated with Defendants.

70. Monetary damages alone cannot adequately compensate Plaintiff for the loss of control over its brand, the erosion of the distinctiveness of the KEPLER Mark, and the injury to Plaintiff's reputation and goodwill.

71. Despite actual notice of Plaintiff's claims, Defendants continue their infringing conduct, making injunctive relief necessary.

**COUNT ONE**
**Federal Unfair Competition (15 U.S.C. § 1125(a))**

72. Plaintiff repeats and realleges paragraphs 1 through 71.

73. Defendants' use of the Infringing Mark in connection with AI platform services is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or approval of Defendants' services.

74. Defendants' conduct constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75. Plaintiff has suffered and will continue to suffer irreparable harm as a result of Defendants' conduct.

76. Defendants' conduct has been willful, deliberate, and in bad faith, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT TWO**
**New York Common Law Trademark Infringement**

77. Plaintiff repeats and realleges paragraphs 1 through 76.

78. Plaintiff's KEPLER Mark is valid and protectable under New York common law.

79. Defendants' use of the Infringing Mark is likely to cause confusion as to the source, affiliation, or sponsorship of Defendants' services.

80. Defendants' actions have damaged and will continue to damage Plaintiff's goodwill and reputation.

**COUNT THREE**
**New York Common Law Unfair Competition**

81. Plaintiff repeats and realleges paragraphs 1 through 80.

82. Defendants have misappropriated Plaintiff's goodwill by using the Infringing Mark.

83. Defendants' conduct is willful and in bad faith.

84. Plaintiff has been damaged as a result.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1. Declaring that Defendants have violated Section 43(a) of the Lanham Act and New York common law;

2. Declaring that Plaintiff has superior rights in the KEPLER Mark;

3. Entering a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, from adopting, using, or displaying "Kepler" or any mark confusingly similar thereto in connection with any goods or services;

4. Permanently enjoining Defendants from challenging, opposing, or otherwise interfering with Plaintiff's use and registration of the KEPLER Mark with the United States Patent and Trademark Office;

5. Ordering Defendants immediately to cease all existing advertising, promotional campaigns, sales efforts, and other ongoing commercial activities using the Infringing Mark or any confusingly similar designation, and to take all steps necessary to withdraw, recall, or discontinue any such materials currently in circulation;

6. Ordering Defendants immediately to remove "Kepler" from all websites, social media accounts, promotional materials, sales materials, investor materials, presentations, domain names, and other marketing or public-facing materials;

7. Ordering Defendants to preserve and produce documents sufficient to identify all revenues, profits, customers, prospective customers, and promotional materials associated with Defendants' use of "Kepler";

8. Ordering Defendants to account for and disgorge all profits derived from their use of the Infringing Mark;

9. Awarding Plaintiff its actual damages;

10. Awarding Plaintiff damages pursuant to 15 U.S.C. § 1117(a);

11. Declaring this an exceptional case and awarding Plaintiff its reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1117(a);

12. Awarding Plaintiff pre-judgment and post-judgment interest; and

13. Granting such other and further relief as the Court deems just and proper.

Dated: September 23, 2026
New York, New York

**BOCHNER PLLC**

By: <u>/s/ *Serge Krimnus*</u>
Serge Krimnus, Esq.
Gregory Kenyota, Esq. (*pro hac vice* forthcoming)
1040 Avenue of the Americas, 15th Floor
New York, New York 10018
(646) 971-0685

serge@bochner.law
gkenyota@bochner.law

*Attorneys for Plaintiff*